J-S37025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GABRIEL GONZALEZ, | |
| Appellant | No. 2115 EDA 2014 |

Appeal from the PCRA Order July 11, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0303521-2000

BEFORE: GANTMAN, P.J., SHOGAN, and LAZARUS, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 07, 2015**

Appellant, Gabriel Gonzalez, appeals *pro se* from the order denying his third petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

In addressing Appellant's direct appeal, this Court summarized the history of this case as follows:

> On the evening of February 29, 2000, Vincent Green was working as a pizza delivery driver in Philadelphia. At approximately 11:00 p.m. the manager of the pizza shop gave Green some pizzas to deliver. As Green conversed with Mr. Sulpizio, his manager, Appellant entered Green's unlocked delivery vehicle. Realizing that the interior light might alert someone to his presence, Appellant ripped out the dome light in the vehicle. When Green entered his delivery vehicle, he sat down and then noticed Appellant in the back seat. Green then began throwing money at Appellant. Despite the fact that Green surrendered his money without a fight, Appellant pointed his gun at Green and shot him in the chest at point blank range. After hearing the gunshot, Mr. Sulpizio glanced outside and noticed a

man about 5'8" or 5'9" exit Green's car and flee. Green stumbled back into the pizza shop and collapsed in front of his manager. Mr. Sulpizio called 911 and Green was rushed to the hospital. Unfortunately, Green was pronounced dead at the hospital a few hours later.

The following day police officers were summoned to a sporting goods store by a security guard. The security guard informed the officers that a man (Appellant), sitting in a parked automobile, had just stolen a pair of sneakers. The police approached Appellant and retrieved the sneakers. The police subsequently arrested Appellant for retail theft.

Early the next morning, while Appellant was still in jail on the retail theft charge, the police received an anonymous phone call, implicating Appellant in the murder of Green. At approximately 4:45 a.m. that morning, Detective Gross b[r]ought Appellant into an interview room at the homicide unit. Gross told Appellant he wished to speak with him regarding the murder of Green. Gross read Appellant his *Miranda* warnings. When Gross finished reading Appellant these warnings, Appellant stated "you might find my fingerprints inside the car because Green asked me to fix his inside light." Gross immediately ceased speaking with Appellant, left the interview room, and retrieved a portable typewriter. Gross also b[r]ought Detective McGuffin into the interview room. Again, Gross read Appellant his *Miranda* warnings, and McGuffin typed them out on the typewriter. Appellant read each of the warnings and initialed and signed his name. Gross left McGuffin to complete the interview with Appellant. After one and one-half hours, Appellant confessed to the shooting.

Appellant stated that on the night in question he had split a six-pack of beer with his friend, "Shiz". At 11:00 p.m., Shiz left to see his girlfriend and Appellant went home and retrieved his handgun. Appellant stated that he entered Green's car and hid in the backseat. When Green entered the car, he saw Appellant lying in the backseat and began throwing money at him. Appellant then shot Green and fled with approximately two hundred dollars. Appellant explained that he fled down an alley towards his house, threw the gun into his backyard, and hid when he saw police looking for him. Appellant indicated that he had gone to the sporting goods store the following day and stole

the sneakers because he felt "bad" for what he had done to Green the previous night, and he wanted to get caught.

At approximately 11:00 a.m. that morning Mr. Serota, an attorney purporting to represent Appellant, arrived at the police station. Gross showed Serota Appellant's signed statement and b[r]ought him in to speak privately with Appellant. Later that day, the police executed a search warrant for Appellant's residence. In the basement of the residence, police found the clothes Appellant claimed he was wearing on the night of the murder, and a gun box for a .45 caliber handgun. The police, however, were unable to ascertain the whereabouts of the handgun.

The Commonwealth charged Appellant with murder, robbery and possession of an instrument of crime. Prior to trial, Appellant retained new counsel. Appellant filed a pretrial motion to suppress any statements he had made to the police while in custody. Appellant alleged detectives Gross and McGuffin beat and choked him in the interrogation room, and that is why he confessed. Mr. Serota testified that Appellant told him the two detectives had beaten and choked him until he confessed. The suppression court ruled Appellant's statements to the police were voluntary, and denied Appellant's motion to suppress.

Appellant proceeded to a jury trial. At trial, Detective Edward Davis testified that he had received an anonymous call on the day after Appellant's arrest. As a result of that call, he ascertained the whereabouts of Appellant, and arranged to have him transported to the homicide unit for questioning. Appellant's counsel did not object to this testimony. The Commonwealth also introduced evidence concerning Appellant's arrest for retail theft on the day following the murder. Once again, Appellant's counsel did not lodge an objection to the introduction of this testimony. Appellant also supplied counsel with the names of alibi witnesses as well as witnesses who would testify regarding Appellant's reputation for peacefulness in the community. Appellant's counsel chose not to call these witnesses at trial. The jury convicted Appellant of second degree murder, robbery, and possession of an instrument of crime. The court sentenced Appellant to life imprisonment.

***Commonwealth v. Gonzales***, 2019 EDA 2001, 809 A.2d 956 (Pa. Super.

filed August 7, 2002) (unpublished memorandum at 1-5) (footnote and

citations omitted).[1]

On August 7, 2002, this Court affirmed Appellant's judgment of

sentence in an unpublished memorandum. ***Gonzales***, 2019 EDA 2001. Our

Supreme Court denied Appellant's petition for allowance of appeal on

September 3, 2004. ***Commonwealth v. Gonzales***, 858 A.2d 108 (Pa.

2004).

On February 9, 2004, Appellant filed a timely *pro se* PCRA petition and

the PCRA court appointed counsel. Counsel filed amended PCRA petitions

and the PCRA court held an evidentiary hearing. The PCRA court ultimately

dismissed the first PCRA petition on May 18, 2007. This Court affirmed the

denial of PCRA relief and our Supreme Court denied allowance of appeal on

January 16, 2009. ***Commonwealth v. Gonzalez***, 1586 EDA 2007, 961

A.2d 1275 (Pa. Super. filed August 18, 2008) (unpublished memorandum),

*appeal denied*, 964 A.2d 1 (Pa. 2009).

On June 28, 2010, Appellant filed a second PCRA petition, which the

PCRA court ultimately dismissed on February 24, 2012. This Court affirmed

the denial of PCRA relief and our Supreme Court denied allowance of appeal

_____

[1] We note that in Appellant's direct appeal his last name was spelled
Gonzales. However, in subsequent proceedings his last name has been
spelled Gonzalez.

on June 7, 2013. ***Commonwealth v. Gonzalez***, 826 EDA 2012, 64 A.3d 25 (Pa. Super. filed December 18, 2012) (unpublished memorandum), *appeal denied*, 68 A.3d 907 (Pa. 2013).

On October 17, 2013, Appellant filed the instant PCRA petition. In an order dated June 30, 2014, the PCRA court dismissed the PCRA petition as untimely filed. The docket in the certified record reflects that the PCRA court's order was sent to the parties on July 11, 2014. This *pro se* appeal followed.

In his brief, Appellant presents the following issues for review, which we set forth verbatim:

> 1. Did the PCRA Court violate's 5th,6th, And 14th Amendment rights as well as Article I, Section nine of the Pennsylvania Constitution. The PCRA Court also violated Canon 1 and Canon 2-A when the court dismissed Appellate's subsequent PCRA Petition filed under 42 Pa. C.S.A. § 9545 (b) (i) (ii), without addressing Appellate's submitted Issues?
>
> 2. Did the Commonwealth withheld exculpatory evidence concerning the anonymous caller and the investigation that led them to believe that Alec Hector was the caller to support the probable cause for the arrest warrant which is a clear "Miscarriage of Justice", Thus rendering the Appellate Actually Innocent?
>
> 3. Did Trial, Direct Appeal, And PCRA Counsel render ineffective for failing to raise the validity of the Probable Cause of the arrest warrant via suppression hearing?

Appellant's Brief at 3.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA

court's determination is free of legal error. *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011) (citing *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005)). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id*. (citing *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

A PCRA petition must be filed within one year of the date that the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). This time requirement is mandatory and jurisdictional in nature, and the court may not ignore it in order to reach the merits of the petition. *Commonwealth v. Murray*, 753 A.2d 201, 203 (Pa. 2000). A judgment of sentence "becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

However, an untimely petition may be received when the petition alleges, and the petitioner proves, that any of the three limited exceptions to the time for filing the petition, set forth at 42 Pa.C.S. § 9545(b)(1)(i), (ii),

and (iii), is met.[2]  A petition invoking one of these exceptions must be filed within sixty days of the date the claim could first have been presented.  42 Pa.C.S. § 9545(b)(2).  In order to be entitled to the exceptions to the PCRA's one-year filing deadline, "the petitioner must plead and prove specific facts that demonstrate his claim was raised within the sixty-day time frame" under section 9545(b)(2).  *Carr*, 768 A.2d at 1167.

Our review of the record reflects that the trial court imposed a sentence of life imprisonment on February 21, 2001.  This Court affirmed Appellant's judgment of sentence on August 7, 2002, and the Pennsylvania Supreme Court denied allowance of appeal on September 3, 2004.  The record does not reflect that Appellant sought review in the United States Supreme Court.  Accordingly, Appellant's judgment of sentence became final

---

[2]  The exceptions to the timeliness requirement are:

(i)    the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)    the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i), (ii), and (iii).

on December 2, 2004, ninety days after the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal and the time for filing a petition for review with the United States Supreme Court expired. 42 Pa.C.S. § 9545(b)(3); U.S.Sup.Ct.R. 13. Appellant did not file the instant PCRA petition until October 17, 2013. Thus, the instant PCRA petition is patently untimely.

As previously stated, if a petitioner does not file a timely PCRA petition, his petition may nevertheless be received under any of the three limited exceptions to the timeliness requirements of the PCRA. 42 Pa.C.S. § 9545(b)(1). If a petitioner asserts one of these exceptions, he must file his petition within sixty days of the date that the exception could be asserted. 42 Pa.C.S. § 9545(b)(2).

The record reflects Appellant attempted to raise, in the instant PCRA petition, the exception that the facts upon which his claim is predicated were unknown to Appellant, 42 Pa.C.S. § 9545(b)(1)(ii). Regarding this exception, this Court has stated the following:

> In order to sustain an untimely PCRA petition under the after-discovered evidence exception, a petitioner must show that the evidence: (1) has been discovered after the trial and could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeachment purposes; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

***Commonwealth v. Johnson***, 841 A.2d 136, 140-141 (Pa. Super. 2003). Furthermore, our Supreme Court has stated that "[a] claim which rests

- 8 -

exclusively upon inadmissible hearsay is not of a type that would implicate the after-discovered evidence exception to the timeliness requirement, nor would such a claim, even if timely, entitle Appellant to relief under the PCRA." ***Commonwealth v. Yarris***, 731 A.2d 581, 592 (Pa. 1999). In addition, our Supreme Court explained that "the after-discovered facts exception focuses on **facts**, **not** on a newly discovered or newly willing source for previously known facts[.]" ***Commonwealth v. Marshall***, 947 A.2d 714, 721 (Pa. 2008) (emphasis in original; internal quotation marks and citation omitted). ***See also Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1269 (Pa. 2008) (concluding that alleging a new conduit for a previously known fact "does not transform [the] latest source into evidence falling within the ambit of § 9545(b)(1)(ii)") (citation omitted).

Instantly, Appellant claims that he is entitled to PCRA relief on the basis of after-discovered evidence consisting of affidavits he obtained from two fellow inmates, as well as his own affidavit. The PCRA court found no merit to Appellant's assertion, and addressed his claim as follows:

> Here, [Appellant] submits as after-discovered evidence, and the basis for a new trial, three purported affidavits, one from himself and two others from fellow inmates allegedly in possession of information that he did not possess at the time of his trial. [Appellant's] claim is, however, based on inadmissible hearsay that cannot be the basis for a new trial, therefore his after-discovered evidence claim is meritless. Each purported after-discovered evidence document will be analyzed below.

The *first* document is submitted by SCI Houtzdale inmate Clifford Terlonge and is in fact not an affidavit, but rather an unsigned and undated recitation of hearsay from Ale[c] Hector[3] stating what Mr. Hector allegedly told [Mr. Terlonge] about events surrounding decedent's murder. The document also contains a statement from Mr. Terlonge that he told Officer Holman that he and Mr. Hector were together the night of the decedent's murder. As this court stated at [Appellant's] May 29, 2014 status hearing, to satisfy the PCRA time-bar, after-discovered evidence must be "producible and admissible." Accordingly, given that there is no hearsay exception to the admissibility requirements for the after-discovered evidence exception, this court properly found that [Appellant] was not entitled to a new trial based on Mr. Terlonge's statement. Furthermore, as with Ale[c] Hector's affidavit submitted with [Appellant's] second petition, it is clear that the contents of Mr. Terlonge's statement could only be used to impeach Officer Holman's testimony.

The *second* document, an affidavit submitted by SCI Houtzdale inmate Tyree Bush, also fails to provide the basis for a new trial because it too is inadmissible hearsay. In his affidavit, Mr. Bush claims that he observed Mr. Terlonge's encounter with Officer Holman, fourteen (14) years ago. Indeed, Mr. Bush's affidavit merely confirms what Mr. Terlonge allegedly said to Officer Holman, and as such is also inadmissible hearsay that cannot be the basis for a new trial. Even if admissible, the Bush evidence could only be used to impeach the testimony of Officer Holman. Thus, this court properly found it insufficient to overcome the PCRA time-bar.

In his own affidavit, [Appellant] explains how he first became aware of this "after-discovered evidence" on August 28,

_____

3 In his untimely second PCRA petition, Appellant presented an affidavit from Alec Hector, in which Hector stated that the police knew his identity, that Hector called the police station and falsely accused Appellant of the murder, and Hector was afraid of being implicated in the murder himself. ***Commonwealth v. Gonzalez***, 826 EDA 2012, 64 A.3d 25 (unpublished memorandum) at 10. Also in the second PCRA petition, Appellant included an affidavit from fellow inmate Chester Wiles averring that Hector admitted to Wiles that Hector falsely accused Appellant of murder. ***Id***.

2013. Therein, he stated that fellow inmates Terlonge and Bush approached him while in state incarceration and disclosed the aforementioned information about the night of decedent's murder fourteen (14) years earlier. [Appellant's] affidavit merely states that he filed this third petition within sixty (60) days of becoming aware of the aforementioned inadmissible hearsay evidence. Nevertheless, for the reasons stated above, [Appellant] is not entitled to relief.

As in **Yarris**, the trial record herein amply demonstrates that [Appellant's] evidence which purportedly reveals that someone else committed the murder for which he was convicted is not within any exception to the PCRA time-bar.

[Appellant] claims that he is entitled to a new trial under the PCRA because the facts stated in the purported affidavits were unknown to him and could not have otherwise been obtained prior to trial. Third Petition for Post-Conviction Relief at 17, **Commonwealth v. Gonzalez**, No. 2115 EDA 2014. [Appellant] has, however, failed to prove that the information allegedly discovered on August 28, 2013, and contained in the submitted documents could not have been obtained by the exercise of reasonable diligence prior to the conclusion of the trial. [Appellant] also claims that the after-discovered evidence contained in the submitted documents is not cumulative or corroborative of any evidence presented at trial. **Id**. at 18. In fact, [Appellant] insists that Officer Holman's testimony denying his own presence at the scene of the murder is false and that the evidence implicates a new suspect. **Id**. at 18, 19. Yet, in assessing the content of the evidence as a whole, [Appellant] has not provided sufficient proof that the documents submitted are not merely corroborative or cumulative of evidence previously submitted in prior PCRA petitions.

Moreover, even if the foregoing affidavits constituted admissible after-discovered evidence, absent significant indication that it [sic] will not be used solely for impeachment purposes, [Appellant] has failed to overcome the time bar for PCRA relief. [Appellant] asserts that in spite of the Commonwealth's overwhelming evidence, including his eight page statement to the police, which contains his confession to decedent's murder, the submitted documents support [Appellant's] innocence and prove the need for a new trial. However, as the trial record aptly demonstrates, the evidence

presented against [Appellant] was overwhelming. Inasmuch as the record contains [Appellant's] confession to the murder for which he was convicted, and over a dozen discrete facts from that confession that were documented by independent evidence, [Appellant] has failed to establish that the new evidence would compel a different verdict. Thus, where [Appellant] only offers as after-discovered evidence unauthenticated and inadmissible affidavits of himself and two fellow inmates, he has failed to prove the need for a new trial or to plead and prove specific facts that demonstrate his claim was actually raised within the 60 day time frame as required under subsection 9545(b)(1)(ii).

PCRA Court Opinion, 12/3/14, at 10-13.

We agree with the PCRA court's analysis and likewise conclude that, even if the affidavits did present admissible evidence, they would be used only to impeach the testimony of the police relating to the events surrounding the investigation of Appellant as the murderer. Moreover, by employing new affidavits pertaining to Alec Hector, Appellant cannot now rely on "newly willing source[s] for [this] previously known fact[]," and his attempt to invoke the newly-discovered facts exception to the PCRA timeliness requirements lacks merit. *Commonwealth v. Marshall*, 947 A.2d at 721. Therefore, it is our determination that the PCRA court did not err in finding that Appellant's instant PCRA petition is untimely and that no exceptions to the timeliness provision applies.

Consequently, because Appellant's third PCRA petition was untimely and no exceptions apply, the PCRA court lacked jurisdiction to address the claims presented and grant relief. *See Commonwealth v. Fairiror*, 809 A.2d 396, 398 (Pa. Super. 2002) (holding that PCRA court lacks jurisdiction

to hear untimely petition). Likewise, we lack the authority to address the merits of any substantive claims raised in the PCRA petition. ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007) ("[J]urisdictional time limits go to a court's right or competency to adjudicate a controversy.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2015